NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAR 20 2019

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 17-10544 |
| Plaintiff-Appellee, | D.C. No. |
| v. | 4:16-cr-02096-JAS-BGM-1 |
| ANHELY MARTINEZ-CAMARGO, AKA Anhely Camargo-Martinez, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Arizona
James Alan Soto, District Judge, Presiding

Submitted March 8, 2019[**]
Phoenix, Arizona BC

Before: CLIFTON, IKUTA, and FRIEDLAND, Circuit Judges.

Anhely Martinez-Camargo ("Martinez-Camargo") appeals her convictions

for conspiracy and possession with intent to distribute 50 kilograms or more of

marijuana, and conspiracy and importation of the same, in violation of 21 U.S.C.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

§§ 846, 841(a)(1), 841(b)(1)(C), 963, 952(a), 960(a)(1), and 960(b)(3). Martinez-Camargo was arrested when she attempted to cross the U.S.-Mexico border with approximately 100 kilograms of marijuana hidden in her car. On appeal, she challenges the district court's rulings on the admissibility of her video-taped interview at the border and the manner in which the district court provided the interview transcript to the jury. Because the district court committed no reversible error, we affirm.

**1.** Martinez-Camargo's pre-trial motion to suppress the statement she made after she was arrested was properly denied. We need not decide whether she waived her suppression argument or what standard of review applies because her claim fails under any standard. There was nothing deficient about the initial warnings provided to her by Officer Littlejohn, *see California v. Prysock*, 453 U.S. 355, 359 (1981) (per curiam) (no "talismanic incantation" of *Miranda* warnings required), and Martinez-Camargo's single reference to "financial aid" at the end of the interview does not show that she misunderstood her right to counsel.[1]

---

[1] In any event, the cases that Martinez-Camargo cites do not support the proposition that an ambiguous statement at the end of the interview would cast sufficient doubt on the validity of her earlier waiver that it would require suppression. Unlike the interrogation in *United States v. Garibay*, 143 F.3d 534, 538 (9th Cir. 1998), at the beginning of the interview, Martinez-Camargo was advised of her *Miranda* rights in her native language, was offered the help of a translator, appeared to understand her rights, responded affirmatively to Officer Littlejohn's questions about comprehension, and signed a written waiver in her

**2.** The district court did not abuse its discretion in granting the Government's motion *in limine* to exclude the admission of certain portions of the interview video, including the discussion of Martinez-Camargo's right to "financial aid."

Because the financial aid comment fails to show lack of a knowing and intelligent waiver of the right to counsel in the first place, it also does not support the further inference that Martinez-Camargo's statements during the interrogation were involuntary or unreliable. This case is a far cry from *Crane v. Kentucky*, where the Supreme Court held that the defendant was deprived of his constitutional right to a meaningful opportunity to present his defense when the district court issued a blanket exclusion of any testimony about the highly coercive circumstances of the interrogation. 476 U.S. 683, 690-91 (1986). There were no such highly coercive circumstances here. Moreover, the jury was able to watch a video of Martinez-Camargo's waiver and confession and consider the demeanor, tone, and body language of both interviewer and interviewee, so even if there was error in excluding that portion of the video, it was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 23-24 (1967).

---

native language. And unlike the defendants in the state court cases that Martinez-Camargo cites, Martinez-Camargo made no statement during the provision of the *Miranda* warnings themselves that demonstrated a lack of understanding of the warnings or of her rights.

Martinez-Camargo's argument that the rule of completeness, Fed. R. Evid. 106, compels admission of the whole statement also fails. Rule 106 does not "require the introduction of *any* unedited writing or statement merely because an adverse party has introduced an edited version." *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014). Rather, it applies only when the edited statement creates a misleading distortion of the evidence. *Id.* Because the admitted portions of her statement were not misleading, the district court did not abuse its discretion in determining that Rule 106 does not compel the admission of the omitted portions of the statement.

Moreover, the district court did not abuse its discretion in ruling that the statements Martinez-Camargo sought to introduce were also inadmissible under Fed. R. Evid. 403 because of their potential to unnecessarily confuse or mislead the jury. *See United States v. Sangrey*, 586 F.2d 1312, 1315 (9th Cir. 1978).[2]

And, again, even if there was an error, it was harmless because it is still "clear beyond a reasonable doubt that the jury would have returned a verdict of guilty." *United States v. Lynch*, 903 F.3d 1061, 1072 (9th Cir. 2018) (internal

---

[2] In addition, even if it was error for the Government to elicit testimony from the interrogating officer that Martinez-Camargo *never* asked any questions about her *Miranda* rights, Martinez-Camargo did not object at that point, nor did she request permission to introduce the rest of the video during cross examination to impeach the officer's answer. Any claim based on this aspect of the Government's case is therefore forfeited.

quotation marks and citations omitted).

**3.** The courtroom deputy's communications with the jury did not violate Martinez-Camargo's right to trial by jury or her statutory or constitutional rights to be present at trial.

The Sixth Amendment right to trial by an impartial jury requires that "when responding to jury questions or requests during deliberations, every effort must be undertaken to avoid influencing or coercing a jury to reach one verdict over another." *United States v. Evanston*, 651 F.3d 1080, 1084 (9th Cir. 2011). Martinez-Camargo argues that the district court crossed this line when the judge sent the courtroom deputy to talk to the jurors about what portions of the video interrogation they wished to review during deliberations. But it is total speculation that the courtroom deputy conveyed anything about what the judge thought about the facts or law of the case. *See Lynch*, 903 F.3d at 1082 (holding that contact with the jury that did "not rise to [the] level of conveying anything about facts or law" were not ex parte communications). Nothing in the record suggests any impropriety, nor is there reason to think that the courtroom deputy in any way pressured the jury to reach a verdict too quickly simply because she conveyed to the judge what the jury suggested would be "more time efficient."

The Constitution and the Federal Rules of Criminal Procedure also guarantee a defendant the right to be present at trial. *United States v. Frazin*, 780

F.2d 1461, 1469 (9th Cir. 1986). The constitutional right applies only to "critical" stages of the trial, *United States v. Rosales-Rodriguez*, 289 F.3d 1106, 1109 (9th Cir. 2002), whereas the broader statutory right entitles the defendant to be present at "every trial stage, including jury impanelment and the return of the verdict," Fed. R. Crim. P. 43(a)(2). Here, the record suggests that the district court acted properly in considering the request from the jury to review portions of the interview, discussing how to respond to that request with counsel, and ultimately in delivering its decision to the jury foreperson in open court—all in the presence of the parties. *See United States v. Kupau*, 781 F.2d 740, 743 (9th Cir. 1986). Martinez-Camargo's objection that she was absent during a critical stage hinges on whether the few minutes when the judge instructed the courtroom clerk to speak with the jury and confirm which portions of the interview they wished to review constituted a critical stage of the proceedings. We are not persuaded that they were. *See McNeal v. Adams*, 623 F.3d 1283, 1289 (9th Cir. 2010). There is certainly nothing "disturbing" about this sequence of events, *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 460 (1978), because that there is no indication that the deputy was acting as a conduit for the judge. Although it would have been preferable for the judge to ask the jury to clarify its request in open court, asking the courtroom clerk to obtain that information does not rise to the level of a constitutional or statutory violation, even in the absence of a transcript. *See Lynch*,

6

903 F.3d at 1083.

**4.** The district court's decision to send the written transcript of Martinez-Camargo's video-recorded interrogation to the jury room during deliberations, despite the parties' stipulation to the contrary, also does not warrant reversal.

We need not decide whether the district court abused its discretion, because even if it did, the error was harmless. The jury had already seen the video during trial, and Martinez-Camargo had stipulated to the transcript's accuracy. The district court did not abuse its discretion in allowing the jury to view the transcript. *See United States v. Taghipour*, 964 F.2d 908, 910 (9th Cir. 1992). Further, though Martinez-Camargo argues that the transcript gives a false impression because it does not convey her body language, because she "does not question the accuracy of the transcripts and makes no showing of any prejudice stemming from the use of the transcript during deliberations, the district judge did not abuse his discretion." *Id.*

Martinez-Camargo's arguments that the district court should have required that the transcript be reread in open court are also unconvincing. She relies on cases in which the jury asked to review the transcripts of witnesses' testimony at trial—but the argument that the requirements articulated in those cases apply to review of a transcript of a pretrial confession by the defendant that is admitted as a trial exhibit is foreclosed by *United States v. Chadwell*, 798 F.3d 910, 915 (9th Cir.

7

2015) ("The concern for avoiding undue emphasis on particular trial *testimony* did not limit the discretion of the district court to send the video *exhibit* to the jury room 'for review like all other evidentiary exhibits.'" (quoting *United States v. Cuozzo*, 962 F.2d 945, 953 (9th Cir. 1992))).

Finally, Martinez-Camargo argues for the first time on appeal that the court should have given a special instruction on the use of the transcript to avoid undue emphasis on the Government's case. Because this claim was not raised at trial, we review for plain error. *United States v. Banks*, 514 F.3d 959, 976 (9th Cir. 2008). Martinez-Camargo has not established any effect on her substantial rights because the jury had viewed the entire video synchronized with the transcript earlier in the same day.

**5.** Finally, for the reasons discussed above, Martinez-Camargo's cumulative error argument also fails.

**AFFIRMED.**